## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

MN AIRLINES, LLC                                    Case No. 08-35197
dba SUN COUNTRY AIRLINES,                           Chapter 11

                          Debtor.

In re:

MN AIRLINE HOLDINGS, INC.,                          Case No. 08-35198
                                                    Chapter 11
                          Debtor.

## NOTICE OF EXPEDITED HEARING AND MOTION FOR
## DEEMED ACCEPTANCE OF MODIFIED PLAN OF REORGANIZATION

TO:    The entities specified in Local Rule 9013-3

      1.      MN Airlines, LLC dba Sun Country Airlines and MN Airline Holdings, Inc. ("Debtor"), through its undersigned attorneys, moves the court for the relief requested below and gives notice of hearing.

      2.      The court will hold a hearing on this motion at **9:00 a.m. on September 10, 2010,** before the Honorable Robert J. Kressel, Courtroom 8 West, U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415.

      3.      Any response to this Motion must be filed and served before the time set for the hearing. **Unless a response opposing the Motion is timely filed, the Court may grant the relief requested in the Motion without a hearing.**

      4.      This Court has jurisdiction over this Motion under 28 U.S.C. §§157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1.  This matter is a core proceeding.  The petition commencing this case was filed on October 6, 2008 (the "Filing Date").  This case is now

pending before this Court.

5.  This motion arises under 11 U.S.C. §1127 and Bankruptcy Rule 3019(a). This motion is filed under Bankruptcy Rules 9013 and 9014 and Local Rule 9013. Debtor seeks an order determining that all creditors who accepted Debtors' Modified Joint Plan of Reorganization dated August 3, 2010 (the "First Plan") have also accepted Debtor's Modified Plan of Reorganization dated September 10, 2010 (the "Second Plan").

6.  The Debtor has solicited acceptance of its First Plan and filed its Ballot Report showing acceptance by all classes of claims which filed timely ballots on the First Plan.

7.  On September 9, 2010, the Debtor filed the Second Plan which makes some technical corrections to the plan and addresses some of the objections to the First Plan raised by the Sun Entities, Tarrant County, Riverside County and the United States. A copy of the Second Plan lined to show changes from the First Plan is attached hereto as **Exhibit A**. None of these changes adversely affect creditors who have, or have not, accepted the First Plan.

8.  In sum, the changes are as follows:

(a) Treatment of Class 3 secured claims is modified as request by Tarrant County and Riverside County. The Debtors do not acknowledge that these creditors hold Class 3 claims, but in the event they do, Class 3 treatment now provides for the retention of valid liens and the payment of interest as provided by law.

(b) Treatment of the claim of the Whitebox Interests has been modified to include in the claim of those entities any amount which they might be required to pay into the Creditors Trust.

(c) Other provisions of the First Plan have been changed based on agreement among counsel for the United States, the Creditors Committee and the Debtors. These

changes do not affect the treatment of any claim.

9.      Under Bankruptcy Rule 3019(a), upon finding that proposed modifications do not adversely change the treatment of the claim of any creditor who has not accepted the change in writing, the modifications can be deemed to be accepted by those who have cast their ballots in favor of the plan before modification.  The Debtor submits that that is appropriate in this case.

10.     An expedited hearing is required on this motion to facilitate confirmation of the Debtor's plan.  No party has been prejudiced by shortened notice and thus cause is shown under Bankruptcy Rule 9006.

**WITNESS**

11.     Debtor reserves the right, if necessary, to offer the testimony of John S. Fredericksen, the Vice President and General Counsel of Debtor, in support of the Motion.

**WHEREFORE**, Debtor requests the Court to enter an order determining that all ballots cast in favor of the Modified Plan of Reorganization dated August 3, 2010 be deemed to be ballots cast in favor of the Modified Plan of Reorganization dated September 10, 2010, and grant such further relief as the Court deems just.

Dated:  September 9, 2010                    RAVICH MEYER KIRKMAN
                                            McGRATH NAUMAN & TANSEY,
                                            A PROFESSIONAL ASSOCIATION

                                            By  /e/  Michael L. Meyer (72527)
                                                    Will R. Tansey (0323056)

                                            4545 IDS Center
                                            80 South Eighth Street
                                            Minneapolis, MN 55402
                                            (612) 332-8511

                                            ATTORNEYS FOR DEBTOR

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **MN AIRLINES, LLC d/b/a** | ) | **Case No. 08-35197 (RJK)** |
| **SUN COUNTRY AIRLINES,** | ) | |
| | ) | |
| **Debtor.** | ) | |
| **In re** | ) | **Chapter 11** |
| | ) | |
| **MN AIRLINE HOLDINGS, LLC,** | ) | **Case No. 08-35198 (RJK)** |
| | ) | |
| **Debtor** | ) | |
| | ) | |

**DEBTORS' MODIFIED JOINT PLAN OF REORGANIZATION**

**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**DATED SEPTEMBER 10~~AUGUST 3~~, 2010**

MN Airlines, LLC d/b/a Sun Country and MN Airline Holdings, Inc., debtors and debtors-in-possession, (individually, the "Debtor" and collectively, the "Debtors") hereby propose the following Joint Chapter 11 plan of reorganization for the Debtors under § 11 U.S.C. 1121(c) for the resolution of Claims and Equity Interests. All creditors, holders of Equity Interests and other parties in interest should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, properties and the results of operations, events leading up to the contemplated restructuring, financial projections for future operations, and for a summary and analysis of the Plan and certain related matters.

*All holders of Claims against and Equity Interests in the Debtors are encouraged to read the Plan, the Disclosure Statement and related solicitation materials in their entirety before voting to accept or reject the Plan.*

## ARTICLE I

## DEFINITIONS

### Section 1.1.    Defined Terms.

As used in the Plan, the following bold face terms when capitalized shall have the meanings ascribed to them below, unless the context otherwise requires. Any term used in the Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

**1.** **Administrative Claim.** Any cost or expense of administration of the Chapter 11 Cases incurred prior to the Effective Date, allowed under Bankruptcy Code section 503(b) and entitled to priority in payment under Bankruptcy Code section 507(a)(2), including any actual and necessary expenses of preserving the estate of any Debtor, any actual and necessary expenses of operating the business of any Debtor, any indebtedness or obligations incurred or assumed by any Debtor during the pendency of the Chapter 11 Cases in connection with the conduct of the business of, the acquisition or lease of property by, or the rendition of services to, the Debtors, all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of any Debtor under 28 U.S.C. § 1930.

**2.** **Administrative Claim Bar Date.** The date set by the Bankruptcy Court as the final date for filing Administrative Claims, other than Professional Fee Claims, Cure Claims, and Operations Administrative Claims.

**3.** **Administrative Claim Reserve.** The segregated bank account in the name of the Reorganized Debtors to be established by the Debtors in accordance with Section 6.2(a) of the Plan.

**4.** **Allowed Claim.** Allowed Claim shall mean (a) any Claim against any Debtor, proof of which has been timely filed with the Bankruptcy Court, or which has been or hereafter is scheduled by the Debtor as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been filed within the applicable period of limitations (if any) for objection to Claims fixed by the Bankruptcy Court, or as to which any objection has been determined by a Final Order allowing

such Claim or (b) a Claim against any Debtor that is allowed (i) in a Final Order or (ii) under the Plan.

5. **Ballot.** The form distributed to each holder of an impaired Claim that is entitled to vote to accept the Plan, on which is to be indicated (a) acceptance or rejection of Plan, (b) election of a holder of an Unsecured Claim to reduce the Claim to $100,000 in accordance with the terms of the Plan.

6. **Bankruptcy Code.** Title 11 of the United States Code, as now in effect or hereafter amended if such amendments are made applicable to the Chapter 11 Case.

7. **Bankruptcy Court.** The United States Bankruptcy Court for the District of Minnesota, or, if such court ceases to exercise jurisdiction over the Chapter 11 Cases, the court that exercises jurisdiction over the Chapter 11 Cases.

8. **Bankruptcy Rules.** The Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended from time to time, and the local rules of the Bankruptcy Court.

9. **Bar Date.** The date ordered by the Bankruptcy Court setting March 11, 2009 as final date for filing Claims, except for a governmental unit, and April 6, 2009 for filing a Claim for a governmental unit.

10. **Business Day.** Any day other than a Saturday, Sunday or other day on which commercial banks in Minneapolis, Minnesota are authorized or required by law to close.

11. **Causes of Action.** Any and all Chapter 5 Causes of Action and any and all claims actions adversary proceedings, causes of action, suits and demands whatsoever, whether pending or not known or unknown, scheduled or not scheduled that have accrued to the Debtors or their Estates or that may be pursued derivatively by or on behalf of the Debtors or the Estates.

12. **Chapter 5 Causes of Action.** Any and all rights, claims and causes of action of the Debtor, its bankruptcy estate under Chapter 5 of the Bankruptcy Code, whether known or unknown, in law, equity or otherwise.

13. **Chapter 11 Cases.** The cases under Chapter 11 of the Bankruptcy Code, commenced on October 6, 2008, captioned above, together with all of the proceedings held therein and all actions taken in connection therewith.

14. **Claim.** Any right to (a) payment from any Debtor, whether or not such right is reduced to a judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (b) an equitable remedy for breach of performance if such breach gives rise to a right of payment from any Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

15. **Claims Objection Bar Date.** The deadline for filing Claim objections set by the Bankruptcy Court in the Confirmation Order.

16.     **Class.**  A category or group of holders of Claims or Interests as designated in Article III of this Plan pursuant to Section 1122(a)(i) of the Bankruptcy Code.

17.     **Confirmation Date.**  The date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the legal docket maintained by the clerk's office.

18.     **Confirmation Order.**  An order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

19.     **Convenience Claim.**  Any Unsecured Claim other than an Unsecured Note Claim, that is filed or scheduled in the amount of $100,000 or less, or reduced by the holder of such Unsecured Claim to that amount by election on the Ballot.

20.     **Creditors Committee.**  The Official Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Case of Sun Country.

21.     **Creditors Trust.**  The trust established under the Plan according to the Creditors Trust Agreement for the benefit of unsecured creditors who do not elect to receive New Common Stock.

22.     **Creditors Trust Agreement.**  The agreement which establishes the Creditors Trust and which is an exhibit to the Plan.

23.     **Disclosure Statement.**  The written disclosure statement describing the Plan, as amended, supplemented, or modified from time to time, prepared and distributed in accordance with section 1125 of the Bankruptcy Code and Bankruptcy Rule 3018.

24.     **Disputed Claim.**  Any Claim within a particular class against any Debtor (i) that has been scheduled as unliquidated, disputed, or contingent, or (ii) to which a party in interest has objected, and (iii) that has not become an Allowed Claim. Wherever in the Plan the word "Disputed" precedes a defined term describing a Claim, that phrase will mean a Disputed Claim of the type described.

25.     **Disputed Claims Reserve.**  The reserves to be established by the Debtors in accordance with the Plan.

26.     **Disallowed.**  When used with respect to a Claim, means that claim or applicable portion thereof has been determined by a Final Order to be invalid or that is barred by operation of a bar date established in the Plan or the Confirmation Order.

27.     **Distribution Dates.**  Any such date, including the Initial Distribution Date and any subsequent Distribution Date, as the Plan or the Reorganized Debtor shall establish for making distributions consistent with the terms of the Plan.

28.     **Effective Date.**  The first Business Day on and after the Confirmation Date, specified by the Debtors on which (a) no stay of the Confirmation Order is in effect, and (b) the conditions to effectiveness specified in the Plan have been satisfied or waived.

17651145\V-1 17651145\V-1 17651145\V-1 17651145\V-1

29.     **Equity Interest or Interest.**  Any issued, unissued, authorized or outstanding capital stock, membership interest and any other equity security, as defined in Section 101(16) of the Bankruptcy Code in any Debtor and any and all (i) shares, (ii) securities, options, warrants, rights, calls, subscriptions, agreements, commitments, conversion rights, or understandings of any nature whatsoever, fixed or contingent, that directly or indirectly (A) call for the issuance, redemption, sale, pledge or other disposition of any shares of capital stock of the Debtor or securities convertible into, or other rights to acquire capital stock of any Debtor, (B)  obligate the Debtor to grant, offer or enter into any of the foregoing,(C) "phantom stock," stock appreciation rights or other similar rights the value of which is related to or based upon the price or value of any class or series of capital stock of a Debtor.

30.     **Estate.  T**he estate created in each Case under Bankruptcy Code section 541.

31.     **Final Order.**  An order that has not been reversed or stayed, is no longer subject to appeal, certiorari proceeding or other proceeding for review, reargument, or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review, reargument, or rehearing has been requested or is then pending and the time to file any such appeal, certiorari proceeding or other proceeding for review, reargument, or rehearing has expired or as to which any right to appeal, petition for certiorari, reargue, or seek rehearing shall have been waived in writing in form and substance satisfactory to the Debtors, the Reorganized Debtors or the Creditors Committee, as applicable. .

32.     **Initial Distribution Date.**  The first Business Day that is no more than fourteen calendar days after the Effective Date.

33.     **Intercompany Claim**.  Any Claim arising prior to the Petition Date against any Debtor by another Debtor.

34.     **MN Holdings**.   MN Airline Holdings, Inc.

35.     **Net Available Funds.**  The Debtors' cash on hand as of a given date, less cash used to fund the distributions under the Plan.

36.     **New Board**.  The Board of Directors constituted on the Effective Date pursuant to Section 7.4 of the Plan.

37.     **New Common Stock.**  The single class of 1,000,000 shares of common stock with a stated value of $20 per share issued by the reorganized MN Holdings on the Effective Date of the Plan, which stock shall be fully paid and non-assessable.

38.     **New Common Stock Distribution:**  The New Common Stock issued to the holder of Allowed Unsecured Claims.

39.     **Non-Ordinary Course Administrative Claim.**  Any Administrative Claim other than an Ordinary Course Administrative Claim, Professional Fee Claim or U.S. Trustee Fees

40. **Ordinary Course Administrative Claims.** Any Unsecured Claim relating to the provision of goods or services to any Debtor arising with, or held by, person or entities with whom a Debtor is conducting businesses on or after the Petition Date or entitled to administrative priority by order of the Bankruptcy Court or any claim by a governmental unit under Section 503(b)(1)(B) and (C) of the Bankruptcy Code.

41. **Other Causes of Action.** Any and all rights, claims and causes of action of the Debtors, their bankruptcy estates, whether known or unknown, in law, equity or otherwise, other than Chapter 5 Causes of Action.

42. **Other Secured Claim**. A Secured Claim arising prior to the Petition Date of any Debtor other than the Claim of the City of Los Angeles, Los Angeles World Airports, JFK International Airports LLC, the Port of Authority of New York and New Jersey-JFK, and Swissport USA, Inc., to the extent of the value of its interest in an Estate's Interest in Property.

43. **Person.** Any individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization or government or subdivision thereof or other entity.

44. **Petition Date.** October 6, 2008, the date on which the Debtors filed their petitions under Chapter 11.

45. **Petters Interests.** All Persons holding Unsecured Claims who were affiliates of Thomas Petters, including specifically, but without limitation, Petters Aviation, LLC, Petters Group Worldwide, and Petters Aircraft Leasing, LLC.

46. **Plan.** This joint plan of reorganization under Chapter 11 of the Bankruptcy Code, either in its present form or as it may be further amended, supplemented, or modified in accordance with the terms hereof from time to time.

47. **Priority Claim.** A Priority Tax Claim or a Priority Non-Tax Claim.

48. **Priority Non-Tax Claim.** Any Claim against any Debtor to the extent entitled to priority in payment under sections 507(a)(4)-(7) or sections 507(a)(9)-(10) of the Bankruptcy Code.

49. **Priority Tax Claim.** Any Claim against the Debtor to the extent entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

50. **Professional Fee Claim.** Any Administrative Claim of a professional (representing any Debtor or the Creditors Committee) incurred before the Effective Date and approved by the Bankruptcy Court.

51. **Property.** All property rights and interests of any Debtor and all property of such Debtor's bankruptcy estate, whether tangible or intangible, real or personal, including, without limitation, all cash and cash equivalents, tax refunds, accounts receivable, inventory, equipment and Causes of Action and all proceeds thereof and further including, without limitation, all rights, powers, claims and defenses of the Debtor, its bankruptcy estate as provided in the Bankruptcy Code and any other applicable law.

17651145\V-147651145\V-147651145\V-147651145\V-1

52. **Pro Rata Share.** With respect to distributions on Claims, the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

53. **Reorganized Debtors.** The Debtors on and after the Effective Date.

54. **Subsequent Distribution Date.** Any date after the Initial Distribution Date for distributions to be made to holders of Unsecured Claims.

55. **Secured Claim.** Any Claim that is secured by a lien which is not subject to avoidance under the Bankruptcy Code or is otherwise invalid under the Bankruptcy Code or applicable non bankruptcy law on property in which an Estate has an interest, or a Claim that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the holder's interest in the Estate's interest in such property, as determined by a Final Order. The amount of any Claim that exceeds the value of the holder's interest in an Estate's interest in property shall be treated as an Unsecured Claim.

56. **Sun Country.** MN Airlines, LLC d/b/a Sun Country Airlines.

57. **Unsecured Claim.** Any claim relating to the provision of goods or services to the Debtor arising prior to the Petition Date, including, without limitation, Claims related to the rejection of executory contracts and leases, claims relating to pending litigation and Unsecured Note Claims.

58. **Unsecured Note Claims.** Any Unsecured Claim arising from or related to a note issued by any Debtor.

59. **U.S. Trustee Fees.** All fees and charges assessed against any Estate by the U.S. Trustee and due pursuant to section 1930 of title 28 of the United States Code.

60. **Whitebox Interests.** All affiliates of Whitebox Advisors, LLC, including Sun Minnesota Foreign Holdings, LLC, but not including Gary S. Kohler.

**Section 1.2.** **Other Terms.**

Unless the context otherwise requires, any capitalized terms used and not defined herein or elsewhere in the Plan but that are defined in the Bankruptcy Code or Bankruptcy Rules will have the respective meanings set forth therein. Unless otherwise expressly stated in the Plan, the words "herein," "hereof," "hereto," "hereunder" and others of similar inference refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. The term "including" shall not be deemed to be exclusive and shall be deemed to mean "including, without limitation." The singular use of any word as used herein shall include the plural and the plural shall include the singular whenever appropriate, and the use of any gender shall include all genders as appropriate.

Section 1.3.    **Exhibits.**

All exhibits to the Plan will be filed with the Bankruptcy Court before the hearing on approval of the Disclosure Statement and are incorporated into and are a part of the Plan as if set forth in full herein.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

Section 2.1.    **Administrative Claims.**

Each holder of an Allowed Administrative Claim that has not been previously paid will be paid on the Effective Date or as soon thereafter as is practicable after such Administrative Claim becomes an Allowed Administrative Claim the full amount of such Allowed Administrative Claim in cash or on such terms as agreed to by the holder of the Administrative Claim, provided, however, that any Administrative Claim that is an Ordinary Course Administrative Claim may be paid in accordance with the ordinary business terms, in accordance with the agreement giving rise to the Claim or, in the case of a Claim asserted by a governmental unit, in accordance with applicable law.

Petters Aircraft Leasing, LLC (PAL) claims to hold an Administrative Claim of approximately $2.1 million. That Administrative Claim will be allowed in the amount of $1.5 million, and will be paid as follows:

(a)      The entire claim will be due on the sale of the Reorganized Debtors or of substantially all of their assets;

(b)      Interest on the claim will begin to accrue at the rate of 5% per annum on the date the Reorganized Debtor makes its final payment to the Creditors Trust (expected to be April 15, 2012) and will be payable monthly thereafter;

(c)      The principal amount of the claim will be amortized over two years in quarterly payments commencing one quarter after the date interest begins to accrue as provided above; and

(d)      On request of PAL, the Reorganized Debtor will execute and deliver to PAL a promissory note in a form to be filed before Confirmation reflecting the terms of repayment.

Section 2.2.    **Administrative Claim Bar Date.**

The Administrative Claim Bar Date shall be October 15, 2010 or such other date as may be set forth in the Confirmation Order. All requests for payment of Administrative Claims, other than Ordinary Course Administrative Claims and the United States Trustee Fees and Professional Fee Claims, but including any requests for payment of fees and/or reimbursement of expenses under Section 503(b) of the Bankruptcy Code, must be filed by the Administrative Claim Bar Date or such Administrative Claim shall be Disallowed and forever barred from receiving a distribution.

**Section 2.3.** <u>United States Trustee Fees</u>.

United States Trustee Fees payable pursuant to 26 U.S.C.§1930(a)(6) shall be paid on the Effective Date by the Debtors. Any such fees accruing after the Effective Date but prior to the closing of the Chapter 11 Cases shall be paid by the Reorganized Debtors.

**Section 2.4.** <u>Professional Fee Claims</u>.

Each holder of Professional Fee Claim seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to Sections 330, 331 and 503(b)(2) of the Bankruptcy Code shall (i) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the date that is no later than thirty (30) days after the Effective Date or such other date fixed by the Bankruptcy Court and (ii) if granted such an award by the Bankruptcy Court, be paid in cash in such amounts as are Allowed by the Bankruptcy Court within fourteen (14) days from the date of allowance first from any retainer held by the professional and then by the Reorganized Debtors. Any amounts remaining in the retainers shall be returned to the Reorganized SCA.

**Section 2.5.** <u>Priority Tax Claims</u>.

Each Allowed Priority Tax Claim, if any, will be paid in full, in cash, either (i) on the Effective Date (or as soon thereafter as is practicable after any such Claim is allowed) or (ii) at the Debtors' option, in equal quarterly payments over a period not exceeding five years after the date of the order for relief entered against any Debtor in accordance with Bankruptcy Code section 1129(a)(9)(C), together with interest at the rate set by applicable non bankruptcy law from the Effective Date to the Distribution Date.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

The categories of Claims and Interests listed below classify Allowed Claims and Allowed Interests for all purposes, including voting, confirmation, and Plan distributions.

**Section 3.1.** <u>Class 1 Claims – Priority Non-Tax Claims</u>.

Class 1 consists of all Priority Non-Tax Claims..

**Section 3.2.** <u>Class 2 Claims – Secured Claims</u>.

Class 2 consists of Secured Claims as follows:

**2A—<u>City of Los Angeles, Los Angeles World Airports.</u>** This Claim is for landing and other airport fees secured by a letter of credit issued by Alliance Bank in the sum of $152,028. The Claim is in the sum of $12,378.46 and is fully secured.

**2B—<u>JFK International Airport, LLC.</u>** This Claim is for landing and other airport fees secured by a letter of credit issued by Alliance Bank in the sum of $90,000. The Claim is in the sum of $25.24 and is fully secured.

**2C—Port Authority of NY & NJ-JFK.**  This Claim is for landing and other airport fees secured by a letter of credit issued by Alliance Bank in the sum of $90,000. The Claim is in the sum of $25,364.16 and is fully secured.

**2D—Swissport USA, Inc.**  This Claim is for services rendered secured by a letter of credit issued by Alliance Bank in the sum of $33,000.  The amount of the Claim exceeds $33,000 so the Secured Claim of this holder is in the sum of $33,000.

**Section 3.3.    Class 3 Claims – Other Secured Claims.**

Class 3 consists of all Other Secured Claims to the extent of the value of the holder's interests .

**Section 3.4.    Class 4 Claims – Convenience Claims.**

Class 4 consists of all Convenience Class Claims.

**Section 3.5.    Class 5 Claims – Unsecured Claims**

Class 5A consists of all Unsecured Claims other than those held by the Petters Interests and the Whitebox Interests.

Class 5B consists of all Unsecured Claims held by the Petters Interests and the Whitebox Interests.

**Section 3.6.    Class 6- Equity Interests.**

Class 6A consists of all Equity Interests in Sun Country.

Class 6B consists of all Equity Interests in MN Holdings.

**ARTICLE IV**

**PROVISIONS FOR TREATMENT
OF CLAIMS AND INTERESTS**

**Section 4.1.    Priority Non-Tax Claims.**

(a)    Class 1

(i)    Treatment.  All Allowed Priority Non-Tax Claims not previously paid will be paid in full, in cash (except to the extent that the holder of such Claim agrees to a different treatment) on the Effective Date or as soon thereafter as is practicable after such Claim becomes an Allowed Priority Non-Tax Claim.  The legal, equitable and contractual rights of the holders of Allowed Priority Non-Tax Claims are unaltered by the Plan.

(ii)    Voting.  Class 1 is unimpaired and the holders of Class 1 Claims are conclusively deemed to have accepted the Plan.

**Section 4.2.    Secured Claims.**

(i)      Treatment.  Each holder of an Allowed Secured Claim will receive the following:

(ii)      Class 2A.  The holder of the Class 2A claim shall receive payment of that Claim in cash on the Effective Date.

(iii)      Class 2B.  The holder of the Class 2B claim shall receive payment of that Claim in cash on the Effective Date.

(iv)      Class 2C.  The holder of the Class 2C claim shall receive payment of that Claim in cash on the Effective Date.

(v)      Class 2D.  The holder of the Class 2D claim shall receive payment of that Claim in cash on or after the Effective Date by making a draw on the letter of credit which secures the Claim.

(vi)      Voting.  Class 2 is unimpaired, and the holders of Allowed Secured Claims are conclusively deemed to have accepted the Plan.  All Secured Claims shall be subject to allowance under the provisions of the Plan.

**Section 4.3.    Other Secured Claims.**

(i)      Treatment.  Each holder of an Other Secured Claim shall receive such treatment as will render the Claim unimpaired within the meaning of Section 1124 of the Bankruptcy Code on the Effective Date, including the payment of interest as required by applicable non-bankruptcy law and 11 U.S.C §§506 and 511.  Any valid and perfected liens securing Class 3 claims on the Petition Date shall remain in place and continue after confirmation of the Plan.  The failure to object to any Other Secured Claim in the Case shall be without prejudice to the Debtor's or the Reorganized Debtors' right to contest or otherwise defend against such Claim in the appropriate forum when and if such Claim is sought to be enforced by the holder of such Other Secured Claim.

(ii)      Voting.  Class 3 is not impaired and the holders of Allowed Other Secured Claims are conclusively deemed to have accepted the Plan.

**Section 4.4.    Convenience Claims.**

(i)      Treatment. Each holder of an Allowed Convenience Claim shall receive the following:

(a)  on the Effective Date, or as soon thereafter as is practicable, in full and complete satisfaction, settlement and release of and in exchange for such allowed Convenience Claim cash equal to 40% of such Allowed Convenience Claim; and

(b)  its Pro Rata Share of no less than 65.6% of the net proceeds paid out of the Creditors Trust.

(ii)      Voting.  Class 4 is impaired and the holders of Allowed Convenience Claims are entitled to vote to accept or reject the Plan.

**Section 4.5.    Unsecured Claims.**

   **Class 5A.**

        (i)    Treatment. Except to the extent that the holder agrees to less favorable treatment, each holder of an Allowed Class 5A Unsecured Claim, other than the holder of an Intercompany Claim, in full and complete satisfaction, settlement and release of and in exchange for such Allowed Unsecured Claim may elect to receive:

   (a)    Its Pro Rata Share of New Common Stock based on its Allowed Claim and the amount of other allowed Class 5A claims that elect to take New Common Stock  plus the amount of Allowed Class 5B Claim, or

   (b)    Cash payments totaling 35% of each Allowed Claim payable in 3 annual installments on April 15, 2011, 2012 and2013, and

        Its Pro Rata Share, based on the Allowed Claims of Class 5A claim holders who elect this option, of up to 34.4% of the net proceeds paid out of the Creditors Trust.

        (ii)    Voting.  Class 5A is impaired and the holders of Allowed Class 5A Claims are entitled to vote to accept or reject the Plan.

   **Class 5B.**

        (i)    Treatment.  The Allowed Claims of the Petters Interests shall be in the amount of $78,245,000.  The Allowed Claims of the Whitebox Interests shall be in the amount of $27,296,960, plus any amount paid by the Whitebox Interests to the Creditors Trust in resolution of claims made by the Creditors Trust to the extent such amounts are Allowed Claims under 11 U.S.C. §502..  In full satisfaction of their Class 5B Claim, the Petters Interests and the Whitebox Interests shall each receive their Pro Rata Share of the New Common Stock remaining after distribution of the New Common Stock to the holders of Class 5A Claims who elect to receive New Common Stock, to be distributed among the Persons constituting the Petters Interests and the Whitebox Interests as those parties see fit, provided that such distribution of stock is acceptable to the U.S. Department of Transportation.

        (ii)    Class 5B is impaired and the holders of Allowed Class 5B Claims are entitled to vote to accept or reject the Plan.

**Section 4.6.    Equity Interests.**

        (i)    Each holder of an Allowed Equity Interest will be treated as follows:

        (ii)    Class 6A- Sun Country Equity Interests- For the benefit of the holders of New Common Stock and not on account of its Equity Interests in Sun Country, MN Holdings shall retain its interests in Sun Country.

(iii)    Class 6 B- MN Holdings Equity Interests  Holders of Equity Interests in MN Holdings will not receive or retain any distribution or other property under the Plan.  Equity Interests in MN Holdings will be deemed canceled on the Effective Date.

(iv)    Treatment andof Voting.  Classes  6A and 6B are impaired.  Because holders of Equity Interests in Classes 6A and 6B will neither receive nor retain any distribution or Property under the Plan on account of their Equity Interests, Classes 6A and 6B will be deemed to have voted to reject the Plan.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THE PLAN

**Section 5.1.    Voting Classes.**

Each holder of an Allowed Claim in Classes 4 and 5 shall be entitled to vote to accept or reject the Plan.

**Section 5.2.    Nonconsensual Confirmation.**

The Debtors will request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code section 1129(b) with respect to any impaired Class.  In the event that holders of Allowed Claims in either of Classes 4 or 5 fail to accept the Plan by the requisite percentages in each such class, the Debtor reserves the right, in consultation with the Creditors Committee and with its consent to (i) modify the Plan in accordance with Article XI hereof, and/or (ii) seek Plan confirmation under Bankruptcy Code section 1129(b) with respect to each such class, if at least one such class has accepted the Plan.

## ARTICLE VI

## PLAN IMPLEMENTATION

**Section 6.1.    Distributions Under the Plan.**

(i)    Disbursing Agent.  Except as otherwise provided herein, all distributions and other payments to be made by the Debtors or the Reorganized Debtors under the Plan or otherwise in connection with the Chapter 11 Cases (including without limitation, Professional Fee Claims and statutory fees) shall be made by the Debtors or the Reorganized Debtors (or such entity designated by the Reorganized Debtor) as Disbursing Agent.  The Disbursing Agent shall not be required to give any bond, surety or other security for the performance of its duties, unless otherwise ordered to by the Bankruptcy Court.  In the event the Disbursing Agent is so ordered, all costs and expenses in connection therewith shall be borne by the Reorganized Debtors.

(ii)    Powers of the Disbursing Agent.  The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all distributions and other payments, contemplated hereby, (iii) exercise such powers as may be vested in it by order of the Bankruptcy Court.

(iii)     First Distribution Date.  On the Effective Date, the Initial Distribution Date or as soon thereafter as is reasonably practicable, the Reorganized Debtors shall make, or shall make adequate reserves for, the distributions required to be made under the Plan to holders of Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Tax Claims, Allowed Unsecured Claims, and Convenience Claims.

(iv)     Subsequent Distributions.  Any Distribution that is not made on the Effective Date or the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by a Reorganized Debtor in a Disputed Reserve for distribution (in full, in the case of Administrative Expenses Claims, Priority Tax Claims, or Other Priority Claims) and up to its ratable proportion with respect to the Claims in Class 5.  No interest shall accrue or be paid on the unpaid amount of any distribution paid on a subsequent Distribution Date in accordance with this Article.

(v)     Final Distribution Date.  On or promptly after the final distribution date (at which time all Disputed Claims will have been resolved such that each of such Claims has been either Allowed or Disallowed in whole or in part), the Reorganized Debtors shall file a final decree closing the Chapter 11 Cases and thereupon shall be relieved of all duties under the Plan.

**Section 6.2.     Creditors Trust.**

(i)     Deposit.  On the Effective Date or thereafter as provided below, the Debtor shall deposit into the Creditors Trust the following property:

(a)     $100,000 in cash to fund the expenses of the Creditors Trust,

(b)     $75,000 in cash on April 15, 2011 and $75,000 in cash on April 15, 2012,

(c)     All Chapter 5 Causes of Action against Sun Credit LLC, Sun Minnesota Foreign Holdings, LLC and Sun Minnesota Domestic Holding, LLC; and

(d)     The right to object to any claim filed by Gary S. Kohler and all Other Causes of Action against Gary S. Kohler.

(ii)     **Trustees.**  The trustee of the Creditors Trust shall be Morris Garfinkle, the financial advisor to the Creditors Committee.

**Section 6.3.     Establishment and Maintenance of Disputed Claims Reserves.**

(i)     Administrative Claims Reserve.  On the Confirmation Date, the Debtors shall provide a good faith estimate of the aggregate amount of unpaid Administrative Claims and the Reorganized Debtors shall establish an Administrative Claims Reserve in order to make the payments to holders of Administrative Claims such Administrative Claims become Allowed and/or are scheduled to be paid pursuant to the Plan.

(ii)     Property in Trust.  Property placed in the Administrative Claims Reserve shall be held in trust for the benefit of the holders of Claims ultimately determined to be Allowed.  The Administrative Claims Reserve shall be closed and extinguished by the Reorganized Debtors when all Distributions and other dispositions of cash or other property required to be made hereunder will have been made in accordance with the terms of the Plan.  Upon closure of the Administrative Claims Reserve, all cash (including any investment yield on the cash) or other property held in that Disputed Reserve shall revest in and become the Property of the Reorganized Debtors.

(iii)     General Distribution Provisions; Undeliverable Distributions.  Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, distributions to the holders of Allowed Claims shall be made by the Reorganized Debtors at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder or (b) the last known address of such holder if no proof of Claim is filed or if the Debtors, or the Reorganized Debtors have been notified in writing of a change of address.  If any distribution is returned as undeliverable, the Reorganized Debtors may, but are not obligated to, make such efforts to determine the current address of the holder of the Claim with respect to which the distribution was made.  Amounts in respect of any undeliverable distributions made by the Reorganized Debtors shall be returned to, and held in trust by, the Reorganized Debtors, until the distributions are claimed or are deemed to be unclaimed property upon the expiration of six (6) months from the return of the undeliverable distribution, as set forth below in Section 6.2(e0.  The Reorganized Debtors shall have the discretion to determine how to make distributions in the most efficient and cost-effective manner possible; *provided, however*, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

(iv)     Unclaimed Property.  Except with respect to property not distributed because it is being held in a Reserve, distributions that are not claimed by the expiration of six (6) months from the date the distribution is made, will be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall vest or revest in Sun Country as a Reorganized Debtor, and the Claims with respect to which those distributions are made shall be automatically cancelled.  After the expiration of that six (6) month period, the claim of any Person to those distributions shall be discharged and forever barred.

(v)     Compliance with Tax Requirements.  In connection with making distributions under this Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  Notwithstanding the foregoing, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit on account of such distributions.

(vi)     Interest on Claims.  Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim.  Except as expressly provided herein or in a Final Order of the Court, no prepetition Claim shall

be Allowed to the extent that it is for post petition interest or other similar charges. Interest shall be paid on Administrative Claims to the extent required by non-bankruptcy law.

(vii)   No Distribution Pending Allowance.  Notwithstanding any other provision of the Plan, the Reorganized Debtors shall not distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed, provided, however, that no distribution shall be withheld if the nature of the dispute is de minimus in amount.

### Section 6.4.   Minimum Distributions.

Notwithstanding anything herein to the contrary, if a distribution to be made to a holder of an Allowed General Unsecured Claim on the Initial Distribution Date or any subsequent date for such Distributions would be $15 or less, no such Distribution is required to be made to that holder unless the holder makes a request in writing for payment from the Reorganized Debtor.

### Section 6.5.   Intercompany Transactions.

Effective upon confirmation of the Plan, in consideration of its agreement to issue New Common Stock to the holders of approximately $106 million in Class 5A and B Allowed Unsecured Claims against Sun Country and in accordance with generally accepted accounting principles, MN Holdings will assume liability for those Class 5A and 5B Allowed Unsecured Claims before they are paid by issuance of the New Common Stock.

### Section 6.6.   Cancellation of Existing Securities.

On the Effective Date, any document, agreement or instrument evidencing a Claim against the Debtors or Equity Interest in MN Holdings shall be deemed cancelled without any further act or action under the any applicable agreement, law, regulation, order or rule and the obligations of the Debtor under such documents, instruments or agreements evidencing such Claims or Equity Interests shall be discharged, except obligations under the Plan and the right of any party to enforce a subordination agreement consistent with section 6.7 herein.

### Section 6.7.   Third Party Subordination Agreements.

Except as set forth herein, distributions to the various Classes of Claims hereunder will not affect the right of any person to levy, garnish, attach or employ any legal process with respect to such distributions by means of any claimed contractual subordination right. Distributions by the Disbursing Agent shall not be inconsistent with such contractual subordination provisions.  To the extent legal proceedings concerning such contractual subordination provision are pending on the Effective Date, the Disbursing Agent will not make distributions on account of the Claims related to such provisions except pursuant to a Final Order directing such distributions.  The Disbursing Agent shall not be liable to any Person on account of distributions which are ultimately determined to be inconsistent with inter-creditor contractual subordination agreements or rights.

### Section 6.8.   Setoffs.

The Reorganized Debtors may, but shall not be required to, set off against any Claim, and the payments to be made under the Plan in respect of such Claim, any claims of any nature

whatsoever, a Debtor or its Estate may have against the holder thereof, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim against such holder.

### Section 6.9.    Business Day.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### Section 6.10.    Timing.

Wherever the Plan provides that a payment or distribution shall occur "on" any date, it shall mean "on, or as soon as practicable after" such date.

### Section 6.11.    Line of Credit.

On the Effective Date, an entity in the Petters Group will extend a standby line of credit in the maximum amount of $1.5 million to the Reorganized Debtors to expire on December 31, 2010, on substantially the same terms as the-debtor-in possession loan from Elite Landings, LLC to MN Airlines, LLC approved by the bankruptcy court in an order entered December 18, 2008. The line of credit shall be payable on or before April 30, 2011.

## ARTICLE VII

## CONTINUED CORPORATE EXISTENCE, VESTING OF ASSETS IN THE REORGANIZED DEBTORS AND OTHER CORPORATE MATTERS

### Section 7.1.    Revesting of Property.

On the Effective Date, all Property of the Debtors and all Causes of Action, shall vest in the Reorganized Debtors, free and clear of all Claims, Interests, liens, charges or other encumbrances, except as may be otherwise provided herein.

### Section 7.2.    Plan Consolidation.

The Plan proposes and its terms embody a resolution of certain intercreditor issues relating to whether the liabilities and properties of the Debtors should be consolidated solely for purposes of distributions under the Plan, including whether each Estate should be considered separately for purposes of making distributions under the Plan to the holders of Claims and the amount and priority of Intercompany Claims.  Solely for purposes of distributions under the Plan, (a) the separate Chapter 11 Cases shall be consolidated into a single case; (b) all property of the Estate of each Debtor shall be deemed to be property of the consolidated estates; (c) no distributions shall be made on any Intercompany Claims, and (d) all claims based on co Debtor guaranties or other basis of co-Debtor liability shall be cancelled.  The Plan shall not result in the merger or otherwise affect the separate legal existence of each Debtor, other than with respect to distributions under the Plan.

**Section 7.3.    Corporate Action.**

(i)     On and after the Effective Date, the Reorganized Debtors may engage in any act or business or corporate activity authorized by the organizational document and under applicable non bankruptcy law without the Bankruptcy Court's supervision or approval, and free of any restrictions other than those restrictions expressly imposed by the Plan or Confirmation Order;

(ii)     On the Effective Date, any provision in any operating agreements, partnership agreements, limited liability company agreements or any other organizational document (as the same may be amended or restated from time to time) of the Debtors or Reorganized Debtors requiring dissolution, liquidation, or withdrawal of a member upon insolvency, bankruptcy or the filing of Chapter 11 Cases is deemed waived and of no further force and effect; and~~Any~~ action taken to prevent or revoke such potential dissolution or liquidation by any Debtor or Reorganized Debtor or potential withdrawal of any such Debtor or Reorganized Debtor from the applicable limited liability company is ratified and deemed effective to prevent such dissolution or liquidation and the Debtors or Reorganized Debtors shall continue its existence regardless of any such provision.

**Section 7.4.    The New Board.**

On the Effective Date, the authority, power and incumbency of the persons then active, as directors of the Debtor shall be terminated and such directors shall be deemed to have resigned or to have been removed without cause.

The Board of Directors of the Reorganized Debtors shall consist of 3 members. The names of the initial directors are Stanley Gadek, the Chief Executive Officer of the Reorganized Debtors, Douglas Kelley, the Receiver of the assets of Thomas Petters, and ~~Michael Wietecki~~Bruce Nordin, or such other Person designated by the Whitebox Interests who is acceptable to the United States Department of Transportation. Each member of the initial board shall serve until January 31, 2012, or until their successors are duly elected by the holders of the New Common Stock, whichever is later, in accordance with applicable law, applicable corporate governance provisions, and the organizational documents, as same may be amended from time to time.

**Section 7.5.    Authorization and Issuance of New Securities.**

The issuance of the New Common Stock by Reorganized MN Holdings and all securities, notes, stock, instruments, certificates and other documents or agreements required to be issued, executed or delivered pursuant to the Plan and any other actions necessary or desirable in connection therewith is hereby authorized without further act or action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of any entity.

**Section 7.6.    New Common Stock.**

New Common Stock shall not be listed on any exchange and shall not be listed after the Effective Date.

**Section 7.7.    Amendment of the Debtors' Governance Documents.**

The MN Holdings' operating agreement and other corporate documents shall be amended and all action taken to:

(a)     prohibit the issuance of non-voting equity securities; and

(b)     provide to such provisions, terms and conditions necessary to comply, conform with, and implement the terms, conditions and requirements of the Plan.

### Section 7.8.    Equity Compensation Plan.

At, or as soon as practicable after the Effective Date, the board of directors of Reorganized Debtors shall adopt an equity compensation plan as it deems appropriate, pursuant to which the Reorganized Debtors shall implement an equity-based program under which participants shall receive either or some combination of restricted stock, restricted stock units, stock options, stock appreciation rights or other types of equity awards.

### Section 7.9.    Compensation and Benefit Programs.

All employment and severance practices and policies, employment agreements or understandings, (including, without limitation, any and all collective bargaining agreements), and all compensation and benefit plans, policies, and programs of any Debtor applicable to its directors, officers, managers and employees who served as directors, officers, managers and/or employees before or after the Petition Dates, if any, including, without limitation, all savings plans, retirement plans, health care plans, severance benefit plans, incentive plans, workers' compensation programs and life, disability and other insurance plans, are treated as executory contracts under the Plan and are hereby assumed in accordance with Article VIII of the Plan as of the Effective Date pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code.

## ARTICLE VIII

## TREATMENT OF DISPUTED CLAIMS

### Section 8.1.    Objections to Claims.

Objections to Claims shall be filed on or before the Claims Objection Bar Date by the Debtors, the Reorganized Debtors or the Creditors Committee or other entity entitled to do so. All Claims shall be subject to section 502(d) of the Bankruptcy Code notwithstanding the expiration of the Claims Objection Bar Date. The failure by any Debtor or the Creditors Committee to object to, or to examine for purposes of voting, any Claim as of the Confirmation Date shall not be deemed to be a waiver of their right or the right of the Reorganized Debtors or the Creditors Committee to object to, or to re-examine, such Claim in whole or in part after the Confirmation Date.

### Section 8.2.    Debtors' Objections to and Requests for Estimation of Claims; Prosecution of Disputed Claims.

The Debtors, the Reorganized Debtors or the Creditors Committee, as the case may be, will attempt to resolve consensually any disputes regarding the allowance of any Claim. Nevertheless, the Debtors or Creditors Committee may file with the Bankruptcy Court (or any

other court of competent jurisdiction) an objection to the allowance of any Claim, or any other appropriate motion or adversary proceeding with respect thereto. All such objections will be litigated to Final Order; provided, however, that the Debtors or Creditors Committee may compromise and settle, withdraw or resolve by any other method approved by the Bankruptcy Court, any objections to such Claims.

### Section 8.3. **Payments and Distributions on Disputed Claims**.

Notwithstanding any other provision in the Plan, no distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. As soon as practicable after a Disputed Claim becomes an Allowed Claim, the holder of such Allowed Claim will receive all distributions to which such holder is then entitled under the Plan. Except as provided in Bankruptcy Code section 502(d), any Person who holds both an Allowed Claim and a Disputed Claim will receive the appropriate distribution on the Allowed Claim, although no distribution will be made on the Disputed Claim until such dispute is resolved by settlement or Final Order.

### Section 8.4. **Disallowance of Claims without Further Order of the Court**.

As of the Confirmation Date, any Claim designated as disputed, contingent or unliquidated in the Statement of Financial Affairs and Schedules filed by any Debtor, as amended, and for which a proof of claim has not been filed by the Creditor, shall be deemed expunged, without further act or Order of the Bankruptcy Court.

## ARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### Section 9.1. **Rejection of Executory Contracts and Unexpired Leases**.

Except as otherwise set forth herein, on the Effective Date, all executory contracts or unexpired leases of the Debtors will be deemed assumed in accordance with sections 365 and 1123 of the Bankruptcy Code, except those executory contracts and unexpired leases that (i) have been rejected by order of the Bankruptcy Court, (ii) are the subject of a motion to reject pending on the Effective Date, (iii) are identified as to be rejected on a list to be filed with the Bankruptcy Court on or before the Confirmation Date, or (iv) are rejected under the Plan. Entry of the Confirmation Order by the clerk of the Bankruptcy Court shall constitute approval of such assumptions and rejections pursuant to Bankruptcy Code sections 365(a) and 1123.The Debtors will file a schedule of assumed agreements twenty-one (21) days before the Confirmation Date with the Bankruptcy Court of executory contracts and unexpired leases to be assumed under the Plan at confirmation. That schedule of assumed agreements will list the amount of the proposed cure payment required by 11 U.S.C. § 365(b)(1). The schedule of assumed agreements may be amended at any time up to the Effective Date of the Plan.

Any party that objects to the assumption of its executory contract or unexpired lease by any Debtor or to the proposed cure payment must file with the Court and serve on interested parties a written objection with supporting evidence that states the basis for the objection. This objection must be filed with the Court and served no later than ten (10) days before the Confirmation Hearing. Any entity that fails to timely file and serve an opposition will be

deemed to have waived any and all objections to the proposed assumption or the amount of the proposed cure payment.  In the absence of a timely objection by such a party, the Confirmation Order shall constitute a final determination of the amount of the cure payment and that the Reorganized Debtor has shown adequate assurances of its future performance.

In the event of a dispute regarding the cure payment, adequate assurances, or some other matter related to assumption, the cure payment required by 11 U.S.C. § 365(b)(1) shall not be made until after an entry of a Final Order resolving the dispute and approving the assumption. ~~Pending the entry of a Final Order, the executory contract or unexpired lease at issue will be deemed assumed by any Reorganized Debtor unless otherwise ordered by the Court.~~  In the absence of a timely filed objection or upon payment of the cure amount required by 11 U.S.C. § 365(b)(1), any prepetition or post petition arrearage or other Claim asserted in a proof of Claim or listed in the Schedules shall be deemed satisfied in full and the Claim shall be deemed disallowed, without further order of the Court or action by any party.

### Section 9.2.    Rejection Claims.

Allowed Claims arising from rejection of any executory contract or unexpired lease of the Debtors pursuant to the Plan shall be treated as Class 5 Unsecured Claims.

### Section 9.3.    Bar Date for Rejection Claims.

A proof of claim with respect to any Claim arising from rejection of any executory contract or unexpired lease of the Debtor pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received within thirty (30) calendar days after the Confirmation Date. The holder of any such Claim not timely filed and served shall be forever barred from asserting such Claim against any Debtor or its Estate and such Debtor's Estate shall be discharged from such Claims and the Reorganized Debtors shall not be obligated to pay such Claim.

## ARTICLE X

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

### Section 10.1.  Conditions Precedent to Effectiveness.

The Plan shall not become effective unless and until the following conditions are satisfied or waived in accordance with this Article.

(a)     The Bankruptcy Court shall have entered the Confirmation Order, which shall approve the Plan on substantially the same terms and conditions set forth herein;

(b)     The Plan approved by the Bankruptcy Court pursuant to the Confirmation Order shall be form and substance satisfactory to the Debtors and Creditors Committee;

(c)     No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this Section of the Plan are satisfied or waived;

(d) All documents, instruments and agreements provided for under, or necessary to implement, the Plan shall have been executed and delivered by the parties thereto, in form and substance satisfactory to the Debtors and Creditors Committee, unless such execution or delivery has been waived by the parties benefited thereby and all such documents, Instruments and agreements shall be effective on the Effective Date;

(e) All of the payments to be made by the Debtors by or on the Effective Date shall have been made or shall be made on the Effective Date;

(f) The Debtors shall have Net Available Funds of no less than $5 million;

(g) The Debtors or the Reorganized Debtors, as applicable, shall have obtained all governmental and other regulatory approvals or rulings that may be necessary for consummation of the Plan or that are required by law, regulation or order; and

(h) MN Holdings shall have issued the appropriate amount of New Common Stock in accordance with the terms and conditions of the Plan.

### Section 10.2. **Waiver of Conditions**.

Except with respect to the condition set forth in Sections 10.1(a), (b), (c), (e), (g) and (h), the Debtors, with the consent of the Creditors Committee, and to the extent not prohibited by applicable law, may waive one or more of the conditions precedent to the Effective Date set forth in Section 10.1 above.

### Section 10.3. **Satisfaction of Conditions**.

Any actions required to be taken on the Effective Date shall occur, or shall be deemed to have occurred, simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

### Section 10.4. **Failure of Conditions**.

In the event that one or more of the conditions precedent set forth in Section 10.1 hereof cannot be satisfied and the occurrence of such conditions is not waived on or before the date that is 180 days after the Confirmation Date, then the Debtors shall file a notice of the failure of the Effective Date with the Bankruptcy Court and (i) the Confirmation Order shall be vacated by the Bankruptcy Court, (ii) the Plan shall be null and void in all respects, and no distributions under the Plan shall be made, (iii) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iv) the Debtors' obligations with respect to Administrative Expenses, Claims and Equity Interest shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against any Debtor or any other Person or shall prejudice in any manner the rights of any Debtor or any Person in any further proceedings involving the Debtor.

### Section 10.5. **Plan Modification**.

The Debtors, with the consent of the Creditors Committee may alter, amend, or modify the Plan under Bankruptcy Code section 1127 and Bankruptcy Rule 3019 at any time before the Confirmation Date without an additional vote if the Bankruptcy Court finds, after notice and a hearing, that the proposed modification does not adversely change the treatment of any Class, Claim of any holder who has not accepted the modification in writing. After the Confirmation Date and before substantial consummation of this Plan, the Debtors, with consent of the Creditors Committee, have the right to amend or modify the Plan in accordance with the Bankruptcy Code, if circumstances warrant amendment or modification and if, after notice and hearing, the Bankruptcy Court confirms the Plan as amended or modified.

## ARTICLE XI

## RETENTION OF JURISDICTION

### Section 11.1.  Retention of Jurisdiction.

To th extent permitted by law, tThe Bankruptcy Court will retain and have exclusive jurisdiction over the Chapter 11 Cases for the following purposes:

(a)     to determine objections to the allowance of Claims;

(b)     to determine motions to estimate Claims at any time, regardless of whether the Claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

(c)     to determine motions to subordinate Claims at any time and on any basis permitted by applicable law;

(d)     to determine motions for the rejection or assumption of executory contracts or unexpired leases to which any of the Debtors is a party or with respect to which any Debtor may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

(e)     to hear, determine and resolve all applications, motions, adversary proceedings and contested or litigated matters including, without limitation, those related to all Causes of Action preserved under Section 14.1 of the Plan, whether pending on the Effective Date or commenced thereafter by the Reorganized Debtor or the Creditors Trust;

(f)     to determine or otherwise resolve any and all matters under section 505 of the Bankruptcy Code with respect to any tax, fine, penalty or addition to tax asserted against a Debtor, or its Estate;

(g)     to consider any Plan modifications, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court;

(h)     to determine matters involving a Debtor in connection with actions taken or not taken by such Debtor prior to confirmation of the Plan and matters involving the Debtors or in connection with implementation and effectuation of the Plan, or the Confirmation Order;

(i)     to determine all controversies, suits and disputes that may arise in connection with the interpretation, implementation, effectuation or consummation of the Plan or the obligations under the Plan;

(j)     to determine such other matters as may be set forth in the Confirmation Order or as may arise in connection with the Plan, or the Confirmation Order;

(k)     to hear, determine and resolve any matters or issues arising with respect to or relating to any Orders entered by the Bankruptcy Court in  these Chapter 11 Cases;

(l)     to determine any and all applications for allowance of Professional Fees and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(m)     to enforce holders' rights to payments and to the delivery of money or other Property to which holders of Allowed Claims may be entitled under the Plan;

(n)     to issue injunctions, enter and implement other orders or to take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan, or the Confirmation Order;

(o)     to issue orders in aid of execution of the Plan to the extent authorized by Bankruptcy Code section 1142;

(p)     to hear matters relating to the Creditors Trust as provided in the Creditors Trust Agreement; and

(q)     to enter a final decree closing the Chapter 11 Case.

## ARTICLE XII

## RELEASES AND INJUNCTION

### Section 12.1.  Releases.

This Plan and the distributions made under the Plan will be in full and final satisfaction, settlement and release as against any Debtor of any debt that arose before the Effective Date and any debt of a kind specified in Bankruptcy Code sections 502(g), 502(h) or 5 02(i), and all Claims and Interests of any nature, including any interest accrued thereon, before, on and after the Petition Date, whether or not a (i) proof of Claim or Interest based on such debt, obligation or Interest was filed or deemed filed under sections 501 or 1111(a) of the Bankruptcy Code; (ii) such Claim or Interest is allowed under section 502 of the Bankruptcy Code; or (iii) the holder of such Claim or Interest has accepted the Plan.  With respect to Claims held by the United States or its agencies, this section shall not operate to discharge any Claims arising after the Confirmation Date.

### Section 12.2.  Injunction.

As of the Confirmation Date, except as provided in the Plan or the Confirmation Order, all Persons that have held, currently hold or may hold a Claim or other debt or liability that is

addressed in the Plan are permanently enjoined from taking any of the following actions on account of any such Claims, debts or liabilities, other than actions brought to enforce any rights or obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding against the Debtors or their Properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors or their Properties; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtors or their Properties; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or their Properties; and (v) commencing or continuing, in any manner or any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Nothing in the Plan shall enjoin or preclude the United States from pursuing any police or regulatory action against the Debtors or Reorganized Debtors, and nothing in the Plan shall enjoin or otherwise impair the United States' rights of setoff or recoupment, subject to any defenses.

### Section 12.3. <u>Exculpation.</u>

The Debtors, the Creditors Committee and members thereof and each of their respective officers, directors, employees, representatives, counsel, financial advisors, and agents, shall not have or incur any liability to any Person for any act taken or omission occurring on or after the Petition Date in connection with or related to the Debtors, or the Chapter 11 Cases, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administering the Plan (including soliciting acceptances or rejections thereof); (ii) the Disclosure Statement, or any contract, instrument, release or other arrangement entered into or any action taken or not taken in connection with the Plan or the Chapter 11 Cases; or (iii) any distributions made pursuant to the Plan except for acts constituting willful misconduct, gross negligence or breach of fiduciary duty, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS.

### Section 13.1. <u>Preservation of Causes of Action.</u>

Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order or other Order of the Bankruptcy Court, the Reorganized Debtors shall exclusively retain and may prosecute and enforce, and the Plan expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, any claims, demands, rights and causes of action, including the Causes of Action, that any Debtor or its Estate may hold against any Person and (b) accordingly, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), claim splitting or laches shall apply thereto by virtue of or in connection with the confirmation, consummation or effectiveness of the Plan. After the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may pursue, release, abandon, settle or otherwise resolve any and all claims, demands, rights and causes of action, including the Causes of Action, other than those Causes of Action contributed to the Creditors Trust. .

### Section 13.2. <u>Existence of the Creditors Committee.</u>

On the Initial Distribution Date, the Creditors Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and all obligations related to and arising from and in connection with the Chapter 11 Case, and the retention of the Creditors Committees professionals shall terminate except as provided in the following sentence. The Creditors Committee shall continue in existence solely for the purpose of reviewing and being heard by the Bankruptcy Court with respect to applications for compensation and reimbursement of expenses of its professionals pursuant to section 328, 330 and 331 of the Bankruptcy Code.

### Section 13.3.  **Headings.**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

### Section 13.4.  **Binding Effect.**

The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Equity Interests and their respective successors and assigns.

### Section 13.5.  **Plan Controls.**

To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

### Section 13.6.  **Revocation or Withdrawal.**

(a)    <u>Right to Revoke</u>.  The Debtors, with the consent of the Creditors Committee, reserves the right to revoke or withdraw the Plan prior to the Effective Date.

(b)    <u>Effect of Withdrawal or Revocation</u>.  If the Debtors revoke or withdraw the Plan prior to the Effective Date, the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

### Section 13.7.  **Notices.**

Any notice required or permitted to be provided under the Plan or Disclosure Statement to the Debtors or the Reorganized Debtors shall be in writing and served by either (1) certified mail, return receipt requested, postage prepaid, (2) hand delivery, or (3) reputable overnight delivery service, delivery prepaid, to be addressed as follows:

### Section 13.8.  **Limitations on Notice.**

From and after the date the Plan becomes effective, notices of appearance and demands for service filed with the Bankruptcy Court shall no longer be effective.  No further notice shall be required to be served on any Person based upon such notices of appearance or demands for service unless the Person files a renewed request for service of pleadings.

### Section 13.9.  **Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Minnesota shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

**Section 13.10. <u>Exemption from Securities Laws</u>.**

The issuance of the New Common Stock pursuant to the Plan shall be exempt from any securities laws regulation requirements to the fullest extent permitted by Section 1145 of the Bankruptcy Code, section 4.2 of the Securities Act and any other applicable exemptions.

**Section 13.11. <u>Exhibits and Schedules</u>.**

All exhibits and schedules to the Plan are incorporated into and are a part of the Plan s if set forth in full herein..

Dated: ~~August 4~~September 9, 2010        MN  Airlines, LLC

                                          By:_____
                                          Stanley Gadek, Chief Executive Officer


                                          MN Airline Holdings, Inc.

                                          By:_____
                                          Stanley Gadek, Chief Executive Officer

In re:

MN AIRLINE HOLDINGS, INC.,                    Case No. 08-35198
                                                        Chapter 11
                          Debtor.

## UNSWORN CERTIFICATE OF SERVICE

      I, Michael L. Meyer, declare under penalty of perjury that on September 9, 2010, copies of Debtor's:

1.     Notice of Expedited Hearing and Motion for Deemed Acceptance of Modified Plan of Reorganization; and
2.     Proposed Order;

were served by sending to each party a copy thereof as noted on the attached Service List.

Dated: September 9, 2010                    /e/ Michael L. Meyer, 72527

\\rmk\rmkcommon$\home\Lori\WPDATA\41691 CECO-Chap 11\Bank\accept mod plan-unsworn.doc

ELECTRONIC
OFFICIAL COMMITTEE OF UNSECURED CREDITORS
C/O FRUMAN JACOBSON
SONNENSCHEIN NATH & ROSENTHAL LLP
233 SOUTH WACKER DRIVE   STE 7800
CHICAGO IL 60606-6404

ELECTRONIC
OFFICIAL COMMITTEE OF UNSECURED CREDITORS
C/O CAROLE NEVILLE
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 AVENUE OF THE AMERICAS
NEW YORK NY 10020-1089

ELECTRONIC
OFFICIAL COMMITTEE OF UNSECURED CREDITORS
C/O LARRY B RICKE
SPENCE RICKE SWEENEY & GERNES PA
325 CEDAR STREET   STE 600
ST PAUL MN 55101

ELECTRONIC
ACORN CAPITAL GROUP LLC
C/O DANIEL C BECK
WINTHROP & WEINSTINE PA
225 SOUTH SIXTH STREET   STE 3500
MINNEAPOLIS MN 55402-4629

ELECTRONIC
ACORN CAPITAL GROUP LLC
C/O CHRISTOPHER A CAMARDELLO
WINTHROP & WEINSTINE PA
225 SOUTH SIXTH STREET   STE 3500
MINNEAPOLIS MN 55402

ELECTRONIC
SARAH J WENCIL
UNITED STATES TRUSTEE
1015 U S COURTHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS MN 55415

MINN DEPT OF REVENUE
COLLECTION ENFORCEMENT
551 BANKRUPTCY / P O 64447
ST PAUL MN 55164

INTERNAL REVENUE SERVICE
ATTN SPECIAL PROCEDURES
WELLS FARGO PL STOP 5700
30 EAST SEVENTH
ST PAUL MN 55101

IRS DISTRICT COUNSEL
650 GALTIER PLAZA
380 JACKSON STREET
ST PAUL MN 55101

US ATTORNEY
600 U S COURHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS MN 55415

ELECTRONIC
MN AIRLINE HOLDINGS, INC.
ATTN JOHN FREDERICKSEN
1300 MENDOTA HEIGHTS ROAD
MENDOTA HEIGHTS MN 55120

ELECTRONIC
FREESTONE LOW VOLATILITY PARTNERS LP
C/O R FLEISCHER/ J SHEPARD
PRYOR CASHMAN LLP
410 PARK AVENUE
NEW YORK NY 10022

ELECTRONIC
FREESTONE LOW VOLATILITY QUALIFIED PARTNERS LP
C/O R FLEISCHER/ J SHEPARD
PRYOR CASHMAN LLP
410 PARK AVENUE
NEW YORK NY 10022

ELECTRONIC
ELITE LANDINGS LLC
C/O JAMES A RUBENSTEIN / CASS WEIL
MOSS & BARNETT PA
90 SOUTH SEVENTH STREET   STE 4800
MINNEAPOLIS MN 55402-4129

ELECTRONIC
PETTERS AVIATION LLC
C/O JAMES A RUBENSTEIN / CASS WEIL
MOSS & BARNETT PA
90 SOUTH SEVENTH STREET   STE 4800
MINNEAPOLIS MN 55402-4129

ELECTRONIC
AMERICAN AIRLINES INC
ATTN KWANYU HELEN YU
P O BOX 619616   MD 5675
DALLAS/FT WORTH AIRPORT TX 75261-9616

ELECTRONIC
SUN MINNESOTA FOREIGN/DOMESTIC HOLDINGS
C/O JOHN B ORENSTEIN
ROSS & ORENSTEIN LLC
100 SOUTH FIFTH STREET   STE 1200
MINNEAPOLIS MN 55402

ELECTRONIC
ASSET BASED RESOURCE GROUP LLC
C/O MICHAEL A. ROSOW
WINTHROP & WEINSTINE PA
225 SOUTH SIXTH STREET   STE 3500
MINNEAPOLIS MN 55402-4629

ELECTRONIC
RANDALL L SEAVER, TRUSTEE OF PETTERS CAPITAL
C/O RENEE C RUBISH / CHARLES W RIES
MASCHKA RIEDY & RIES
201 NORTH BROAD STREET   STE 200
P O BOX 7
MANKATO MN 56002-0007

ELECTRONIC
DOUGLAS KELLEY PETTERS TRUSTEE
C/OJAMES A LODOEN
LINDQUIST & VENNUM PLLP
80 SOUTH EIGHTH ST   STE 4200
MINNEAPOLIS MN 55402-2205

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

MN AIRLINES, LLC                                    Case No. 08-35197
dba SUN COUNTRY AIRLINES,                            Chapter 11

                    Debtor.

In re:

MN AIRLINE HOLDINGS, INC.,                           Case No. 08-35198
                                                     Chapter 11
                    Debtor.

**ORDER**

This matter came on before the court on Debtor's Motion for Deemed Acceptance of Modified Plan of Reorganization. Michael L. Meyer appeared for the Debtor and other appearances were as noted in the record. The court, having heard the arguments of counsel, reviewed the documents and pleadings on file,

**IT IS ORDERED:**

1.      The motion for expedited hearing on this matter is granted.

2.      That all ballots cast in favor of the Modified Plan of Reorganization dated August 3, 2010 are deemed to be ballots cast in favor of the Modified Plan of Reorganization dated September 10, 2010.

Dated:

                                    _____
                                    Robert J. Kressel
                                    United States Bankruptcy Judge